UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **REBECCA SEALE EAVES,**<br><br>Plaintiff,<br><br>vs.<br><br>**NANCY A. BERRYHILL, Acting Commissioner of Social Security,**<br><br>Defendant. | Civil Action Number<br>**2:17-cv-00876-AKK** |

## MEMORANDUM OPINION

Rebecca Seale Eaves brings this action pursuant to Section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the Administrative Law Judge's denial of disability insurance benefits, which has become the final decision of the Commissioner of the Social Security Administration ("SSA"). For the reasons explained below, the court finds that the Administrative Law Judge ("ALJ") applied the correct legal standard and that his decision—which has become the final decision of the Commissioner—is supported by substantial evidence. Therefore, the court **AFFIRMS** the decision denying benefits.

### I. Procedural History

Eaves worked as an administrative assistant, office assistant, and bookkeeper for more than twenty years until she stopped working in October 2012 at age 48

due to her alleged disability. Doc. 7-7 at 6-7.[1] Eaves filed an application for disability insurance benefits ("DIB") on February 7, 2014, alleging that she suffered from a disability, beginning October 1, 2012 due to chronic and severe neck pain caused by stenosis in the cervical spine. Docs. 7-3 at 16, 34; 7-4 at 2; 7-7 at 6. In addition, Eaves asserts she suffers from depression, high cholesterol, reflux, and acne, which also limit her ability to work. Docs. 7-4 at 2; 7-7 at 6. After the SSA denied her application, docs. 7-3 at 16; 7-5 at 2, Eaves requested a hearing before an ALJ, docs. 7-3 at 16; 7-5 at 10. The ALJ held a hearing on November 25, 2015, where Eaves was represented by an attorney. Docs. 7-3 at 16; 7-5 at 14. Then, on January 27, 2016, the ALJ entered a decision finding that Eaves was not disabled. Doc. 7-3 at 13, 23. The SSA Appeals Council denied Eaves' request for review, rendering the ALJ's decision the final decision of the Commissioner. *Id.* at 2. Having exhausted her administrative remedies, Eaves timely filed this petition for review pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g). Doc. 1.

**II. Standard of Review**

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the

---

[1] Eaves also stopped working on October 1, 2012 because of a lay off when her employer closed its operations. Docs. 7-3 at 43; 7-7 at 6.

correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "'reasonable and supported by substantial evidence.'" *Id*. (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "'[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against those findings. *See id.* While judicial review of the ALJ's findings is limited in scope, it "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

In contrast to the deferential review accorded the Commissioner's factual findings, "conclusions of law, including applicable review standards, are not presumed valid" and are subject to de novo review. *Martin*, 894 F.2d at 1529. The

3

Commissioner's failure to "apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed" requires reversal. *Id.*

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(1). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). Specifically, the ALJ must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

4

*See McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* (citing 20 C.F.R. § 416.920(a)-(f)). "Once [a] finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). However, the claimant ultimately bears the burden of proving that she is disabled, and, "consequently [s]he is responsible for producing evidence in support of he[r] claim." *See, e.g.*, *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.945(a), (c)).

### IV. The ALJ's Decision

In applying the five-step analysis, the ALJ first determined that Eaves met the insured status requirements of the Social Security Act through December 31, 2016, and that she had "not engaged in substantial gainful activity since October 1, 2012, the alleged onset date" of her disability. Doc. 7-3 at 19. The ALJ proceeded to Step Two of the analysis, finding that Eaves had the severe impairment of cervical stenosis. *Id.* At Step Three, the ALJ concluded that the impairment did not "meet[] or equal[] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ." *Id.*

Next, the ALJ determined Eaves' residual functional capacity ("RFC"), stating that: "[Eaves] has the [RFC] to perform medium work as defined in 20 CFR 404.1567(c) except for no driving, no unprotected heights, no right upper extremity pushing or pulling, or overhead reaching." Doc. 7-3 at 19. Although the ALJ initially stated that Eaves has the RFC to perform "medium work" with certain limitations, in his discussion of Eaves' RFC, the ALJ stated that he "finds [Eaves] capable of *light work* with limitations in her right upper extremity with no pushing and pulling or overhead reaching." *Id*. at 22 (emphasis added). In addition, the hypothetical questions the ALJ posed to the vocational expert ("VE") at the hearing assumed an individual who could perform light work. *Id*. at 52-55. Thus, it appears that the ALJ's initial statement of Eaves' RFC contains a typographical error, and the ALJ actually determined that Eaves has an RFC to perform less than a full range of light work. In any event, Eaves does not raise this issue on appeal, or specifically challenge the ALJ's determination of her RFC. *See* doc. 9.

Based on Eaves' RFC, and relying on the testimony of a VE, the ALJ found at Step Four that Eaves "is capable of performing past relevant work as an office clerk and payable clerk, [or] bookkeeper." Doc. 7-3 at 22. Thus, the ALJ did not need to proceed to Step Five, and he concluded at Step Four that Eaves was not

disabled from October 1, 2012 through January 27, 2016, the date of his decision. *Id.* at 23.

### V. Analysis

On appeal, Eaves argues that the ALJ erred by discounting her subjective complaints of disabling pain. Doc. 9 at 5, 9-10. When, as here, the plaintiff alleges disability because of pain, she must present "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted). Thus, a plaintiff's "subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." *Id.* (citations omitted). However, an ALJ may properly discredit a claimant's subjective testimony if the ALJ clearly articulates his reason for doing so and substantial evidence supports the ALJ's finding. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).

At the administrative hearing in this matter, Eaves testified that she became disabled in 2012 due to "[c]onstant burning pain" in her neck and right arm. Doc. 7-3 at 34-35. According to Eaves, the pain, which is in between her shoulder

blades and extends down her right arm into her fingers, started suddenly in 2012 and got "worse and worse." *Id*. Eaves added that activities of daily living make her pain worse, she has no strength in her right arm, she can only lift five pounds with the help of her left hand, she drops things a lot, and she has trouble with buttons and tying her shoes due to numbness and weakness in her right arm. *Id.* at 38. Eaves testified that narcotic pain killers did not help, that she spends half the day lying down to help control her pain, that physical therapy made the pain worse, that doctors told her that conservative measures to treat her pain will not work, and that she requires surgery to fuse her neck. *Id*. at 33-37, 39-40. At the time of the hearing, Eaves had not yet had surgery, opting to take ibuprofen, Mobic, and muscle relaxers instead to treat her pain. *Id*. at 37, 48.

The ALJ considered Eaves' subjective complaints of pain and, applying the correct standard, the ALJ determined that Eaves' "medically determinable impairments could reasonably be expected to cause some pain and limitations; however, [Eaves'] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." *Id.* at 20, 22.[2] Eaves

---

[2] On March 28, 2016, SSR 16-3p superseded SSR 96-7p, the ruling concerning subjective complaints about pain that was in effect when the ALJ issued a decision in this case. Soc. Sec. Ruling 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *1. SSR 16-3p eliminates the term "credibility" from social security policy but does not change the factors that an ALJ should consider when examining subjective pain testimony. *See id.*, at *2-3. Moreover, SSR 16-3p does not apply retroactively, *Hargress v. Soc. Sec. Admin., Comm'r*, 874 F.3d 1284, 1290 (11th Cir. 2017), and when a federal court reviews a final decision in a claim for DIB, the court

8

argues that the ALJ erred in reaching his decision in part because the record contains objective medical evidence that is consistent with Eaves' testimony regarding her pain and limitations. Doc. 9 at 6. Eaves' argument misses the mark because the issue before the court is whether substantial evidence supports the ALJ's decision, not whether the record may support a contrary finding. *See Martin*, 894 F. 2d at 1529 (citations omitted).

Eaves also contends that the ALJ improperly focused on the volume of medical records rather than the content of the records. Doc. 9 at 5.[3] A review of the ALJ's decision belies Eaves' contention and reveals that the ALJ considered the content of Eaves' medical records and explained why the records were not consistent with Eaves' subjective reports of disabling pain. In addition, Eaves' contention that the ALJ mischaracterized her medical records is unavailing because

---

reviews the decision using the rules that were in effect at the time of the decision. SSR 16-3p, 2017 WL 5180304, at *1.

[3] The ALJ noted that Eaves did not frequently seek treatment for her neck pain after the alleged onset date. Doc. 7-3 at 21. Indeed, the record reflects that Eaves saw a physician for treatment on only seven occasions between October 1, 2012, the alleged onset date, and November 25, 2015, the date of the hearing—and on only four occasions for neck or arm pain. *See* doc. 7-8 at 5-69. The relevant rule in effect at the time provides that a claimant's subjective complaints of pain "may be less credible if the level or frequency of treatment is inconsistent with the level of complaints," but the ALJ must first consider "any explanations that the [claimant] may provide, or other information in the case record, that may explain infrequent or irregular medical visits . . . ." SSR 96-7p, 1996 WL 374186, at *7. In this case, Eaves testified that her doctors told her there was nothing they could do for her pain except surgery, and Eaves did not want to have the surgery due to the "many horror stories [she heard] about fusings." Doc. 7-3 at 37, 39. That testimony may provide an explanation for why Eaves visited her physicians infrequently, but the ALJ did not consider it as required by SSR 96-7p. However, the ALJ's error, if any, is harmless because the ALJ articulated other adequate reasons to discredit Eaves' subjective complaints of pain.

she does not point to any specific record that the ALJ mischaracterized, and a review of the records shows that the ALJ accurately described the records he summarized. Moreover, the record shows that the ALJ adequately articulated his reasons for rejecting Eaves' subjective pain testimony and that his decision was supported by substantial evidence.

First, as the ALJ noted, an MRI of Eaves' cervical spine dated June 29, 2012 "documented severe right C6-7 neural foraminal stenosis due to spur and disc combination and severe bilateral C5-6 foraminal stenosis due to uncovertebral spurring." Docs. 7-3 at 21; 7-8 at 23. Following the MRI, Eaves' physician referred her to a specialist, Dr. J. Stanford Faulkner, Jr., who examined Eaves on July 19, 2012. Doc. 7-8 at 36-37. Upon examination that day, Dr. Faulkner found that Eaves' neck "has quite a bit of pain on motion, especially when she is turning to the right side," and that Eaves had weakness in her right hand and arm. *Id.* at 36. An x-ray of Eaves' cervical spine "revealed reversal of the normal cervical lordosis with degenerative disc disease at C5-C6, C6-C7." *Id.*; *see also* doc. 7-3 at 21. Dr. Faulkner diagnosed Eaves with a herniated disc with foraminal stenosis secondary to herniated disc and disc osteophyte complex. Doc. 7-8 at 36. Based on his findings, Dr. Faulkner made three recommendations for treating Eaves' neck pain: 1) do nothing, 2) conservative treatment, specifically cervical traction with Medrol Dosepak, or 3) anterior cervical discectomy with fusion. *Id.* Eaves elected

to try the conservative treatment and was to call Dr. Faulkner if the conservative measures failed. *Id.* at 36-37. There is no indication in the record that Eaves called or saw Dr. Faulkner again.

Although she did not return to Dr. Faulkner, Eaves sought treatment from Dr. P. Colby Maher at Neurosurgical Associates on August 20, 2012. *Id.* at 31-33. Dr. Maher observed that Eaves was in "mild distress" that day, and upon examination, he found that Eaves had some weakness in her right triceps and "very mild hand intrinsic weakness" in her right hand. *Id.* at 32. Additionally, sensory and reflex examinations showed that Eaves had some decreased sensation in her fingers and thumb and "absent right triceps reflex." *Id.* Based on his observations and Eaves' June 29, 2012 MRI, Dr. Maher recommended that Eaves have anterior cervical discectomy with fusion. *Id.* Eaves elected not to follow Dr. Maher's recommendation because she had "heard so many horror stories" about the surgery. Doc. 7-3 at 39.

As the ALJ found, Eaves' MRI, along with Dr. Faulkner's and Dr. Maher's diagnoses and recommendations, provide objective evidence of an impairment that could reasonably be expected to cause Eaves' pain. *See id.* at 22. However, neither Dr. Faulkner nor Dr. Maher placed any limitations on Eaves' functioning, and neither doctor offered a prognosis regarding Eaves' condition in the absence of surgery. *See* doc. 7-8 at 31-33, 36-37.

Moreover, the record indicates that Eaves' condition improved after her visits to Dr. Faulkner and Dr. Maher, and after her alleged onset date. Eaves was found to have normal range of motion and muscle strength upon examination in February 2014 and January 2015. *Id.* at 7, 60. In fact, in January 2015, Eaves denied having muscle pain or weakness, decreased sensation in her extremities, or tingling and numbness. *Id.* at 50. In addition, although Eaves saw a physician in April and June 2014, there is no indication from the treating notes that Eaves complained of neck or arm pain at those appointments. *Id.* at 51-54. Also, Eaves saw a physician for arm pain in May 2014 and for neck pain in March 2015, but she sought and received conservative treatment for her pain at those visits. *Id.* at 47, 59-61. Taken together, the medical records show that Eaves' pain waxed and waned, and that at times she had no symptoms relating to her cervical stenosis. Thus, the records provide evidence to support the ALJ's decision to discount Eaves' subjective complaints of disabling pain.

In addition, Dr. Christopher Baalman performed a consultative examination of Eaves on April 12, 2014. Doc. 7-8 at 39-44. Eaves reported to Dr. Baalman that she has numbness in her right hand and cannot button or unbutton with that hand. *Id.* at 39. Dr. Baalman observed that Eaves had a "loss of sensation to pain in the distal phalanges of the right thumb and index finger" and that "[r]eflexes were absent" in Eaves' right triceps muscle. *Id.* at 41. Nevertheless, during the

exam, Eaves could untie and tie her shoes using her right hand with minimal difficulty, she could pick up a pen cap off the floor without difficulty, Eaves' handwriting was legible, she had no difficulty opening and closing a door with her right hand, and she had normal strength in both arms and hands. *Id.* Moreover, Eaves had normal range of motion in her cervical spine, shoulders, elbows, and forearms. *Id.* at 42-43. In summary, Dr. Baalman found that Eaves showed no overall functional limitation in the use of her hands, which is contrary to Eaves' testimony and reports that she has trouble tying her shoelaces and buttoning and unbuttoning clothes. Docs. 7-3 at 38; 7-7 at 28, 38; 7-8 at 44. Thus, Dr. Baalman's observations provide further evidence to support the ALJ's decision to discount Eaves' testimony regarding her pain and limitations.

Finally, the ALJ properly considered Eaves' reported activities of daily living in evaluating Eaves' subjective testimony regarding her pain and limitations. *See* doc. 7-3 at 20, 22; 20 C.F.R. § 404.1529(c)(3). Eaves reported that she takes care of her granddaughter with the help of her husband. Doc. 7-7 at 25, 28, 31. In addition, Eaves cleans and washes clothes for about an hour a day, fixes simple meals, drives to the grocery store, shops for groceries once a week for about 30-45 minutes, and goes outside almost every day. Docs. 7-7 at 28-30, 37; 7-8 at 40. Additionally, Eaves reported that she can stand for up to one hour and sit for most of the day, or up to eight hours or more. Doc. 7-8 at 40.

13

The ALJ found that these reported activities "are inconsistent with the inability to work" and show that Eaves "is active and engaged." Doc. 7-3 at 22. Eaves correctly asserts that her activities of daily living do not necessarily disqualify her from disability. Doc. 9 at 8 (citing *Lewis v. Callahan*, 125 F.3d 1346, 1441 (11th Cir. 1997)). However, the ALJ may properly consider Eaves' daily activities when evaluating her subjective complaints of disabling pain. 20 C.F.R. § 404.1529(c)(3). And, this case is distinguishable from *Lewis* because Lewis's treating physicians had proffered opinions showing that Lewis was unable to work, and there is no such evidence in the present case. *See* 125 F.3d at 1438. Rather, as mentioned above, there is nothing in the record to suggest that Eaves' treating physicians placed any restrictions on her functioning.

It is clear from the record that at times Eaves reported experiencing significant pain in her neck and arm. Still, credibility determinations are the province of the ALJ. *Wilson v. Heckler*, 734 F.2d 5513, 517 (11th Cir. 1984). Here, the "ALJ made a reasonable decision to reject [Eaves'] subjective testimony, articulating, in detail, the contrary evidence as his reason[] for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002). Thus, in light of the substantial deference owed to the Commissioner's decision, *Dyer*, 395 F.3d at 1212, the court affirms the ALJ's ruling discounting Eaves' subjective accounts of pain.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Eaves is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching his decision. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 11th day of September, 2018.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE